**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 95-20072
Summary Calendar
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

WILLIAM D. MILLER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Texas
(CR H 89 200 2)
_____
August 10, 1995

Before KING, SMITH, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

William Miller appeals the denial of his motion for reduction

of sentence under 18 U.S.C. § 3582(c)(2). We vacate and remand.

_____

[*] Local Rule 47.5.1 provides: "The publication of opinions that have no precedential value and merely decide particular cases on the basis of well-settled principles of law imposes needless expense on the public and burdens on the legal profession." Pursuant to that rule, the court has determined that this opinion should not be published.

Miller pleaded guilty to aiding and abetting the possession of phenylacetone with the intent to manufacture methamphetamine.  At his rearraignment hearing, Miller agreed that he and his co-defendant, William McCatty, had negotiated to teach an undercover officer how to manufacture methamphetamine in exchange for "$5,000 in cash and a large amount of precursory chemicals."  The methamphetamine lab was raided while the "cook" was in progress, and agents seized twelve liters of phenylacetone or $P_2P$, a precursor product of methamphetamine.  After a Drug Enforcement Administration ("DEA") chemist measured and sampled the phenylacetone and other chemicals, the remaining drugs were destroyed.

The compensation agreed upon by Miller and the undercover officer was $5,000, laboratory glassware with a 22-liter capacity, 110 pounds of phenylacetic acid, 50 pounds of sodium acetate, and 25 gallons of acetic anhydride.  Miller objected that his offense level should not be based upon the precursor chemicals that he had bargained to receive in payment, but the government pointed out that those quantities had not been used to calculate the offense level.

Based upon the twelve liters of $P_2P$ seized in the raid, the probation officer determined that Miller's base and adjusted offense levels were 32.  Miller's criminal history category was III, which resulted in a guidelines sentencing range of 151 to 188 months.  The district court adopted the presentence report and

sentenced Miller to a term of 151 months.

B.

After his sentence was affirmed, Miller unsuccessfully sought 28 U.S.C. § 2255 relief on grounds of ineffective assistance of counsel and misapplication of the sentencing guidelines.  He filed a motion to reduce his sentence pursuant to 18 U.S.C. § 3582(c)(2), based upon a retroactive amendment to U.S.S.G. § 2D1.1, which provides that waste material used in manufacturing drugs should not be used to calculate the amount of controlled substance attributable to a defendant.  Miller argued that much of the twelve liters of phenylacetone seized in the raid was waste material.

In opposition, the government stated that the prosecutor had talked with a DEA chemist who calculated that, based upon the chemical rations mixed by Miller and McCatty, "a minimum of 1,784 grams of $P_2P$ and a theoretical maximum of 4,471 grams of $P_2P$ were producible from the mixture, depending on the skill of the 'cooker' and the quality of the substance mixed."  The chemist informed the government that it would be difficult to calculate the actual drug yield.

The government noted that minimum and maximum quantities calculated by the chemist could result in an offense level as low as 30 or as high as 32.  The government argued that, although retroactive application of the amendment to § 2D1.1 might result in

3

a lower offense level,[1] Miller's sentence should not be reduced, because (1) he and McCatty intended to produce as much $P_2P$ as possible; (2) they negotiated with the undercover agent to obtain large quantities of precursor chemicals; and (3) Miller's "self-proclaimed talent" and knowledge of manufacturing techniques required a lengthy sentence in order to protect the public from future crimes and to reflect the seriousness of his offense. The government cited no authority to support its arguments concerning the defendants' intent or Miller's talent for drug-manufacturing.

Without giving Miller an opportunity to respond, the district court denied his motion to reduce sentence. The court relied upon the chemist's calculations and stated that "there was evidence presented . . . that the defendants frequently professed expertise as cookers and that they intended to produce as much $P_2P$ possible." The court noted Miller's intent to acquire a large quantity of precursor chemicals; the need to reflect the seriousness of the offense, promote respect for the law, and impose just punishment; and the need to deter criminal conduct by others and protect the public as factors that militated against a sentence reduction. The court found that Miller had been "fully capable" of producing more than 4,000 grams of $P_2P$ from the "four gallon mixture" seized in the raid. Accordingly, the district court denied Miller's motion to reduce his sentence. The court then denied Miller's motion to

---

[1] Amendment 484, U.S.S.G. App. C, which applies retroactively, modified application note 1 to § 2D1.1 to provide that "[m]ixture or substance does not include materials that must be separated from the controlled substance before the controlled substance can be used." Id.; see also § 1B1.10, p.s. (retroactive application); Towe, 26 F.3d at 617.

appeal in forma pauperis ("IFP"), because it determined that he could not "make a rational argument on the law or the facts to support his claim for modification."

## II.

When a defendant is serving a term of imprisonment, and the applicable sentencing guideline range has been lowered as a result of a retroactive amendment, he is eligible for a reduction in his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(2). United States v. Towe, 26 F.3d 614, 616 (5th Cir. 1994). In determining whether to reduce a sentence under § 3582(c), the district court must consider applicable sentencing factors under 18 U.S.C. § 3553(a) and sentencing commission policy statements. 18 U.S.C. § 3582(c)(2).

We review a district court's ruling on a defendant's § 3582(c)(2) motion for abuse of discretion, United States v. Shaw, 30 F.3d 26, 29 (5th Cir. 1994), but we review for clear error the district court's finding of facts under § 3582(c)(2), United States v. Mimms, 43 F.3d 217, 220 (5th Cir. 1995). A factual finding is clearly erroneous "only if, although there is evidence to support it, [the court is] left with the definite and firm conviction that a mistake has been committed." Id.

## A.

Miller argues that the district court erred by failing to hold an evidentiary hearing on the government's evidence submitted in

opposition to his motion and by failing to give him an opportunity to respond to the government's argument. The government concedes that Miller should have been allowed to respond to its opposition.

In a proceeding pursuant to § 3582(c)(2), the court must give the defendant notice and an opportunity to respond if it intends to base its resentencing decision upon evidence not presented at the original sentencing hearing. United States v. Townsend, 55 F.3d 168, 172 (5th Cir. 1995). In Townsend, the court did not find it necessary to decide whether § 3582(c)(2) requires a hearing under these circumstances. Id. Because the district court denied Miller's motion based upon theories first presented by the government in opposition to the motion without giving Miller an opportunity to respond, we remand for further proceedings in light of Townsend, 55 F.3d at 172.

B.

Miller urges that the district court erred by relying upon the government's anecdotal report of the prosecutor's conversation with a chemist who hypothesized the theoretical quantities of drugs that Miller could have produced based upon reported quantities of precursor chemicals that were destroyed without being analyzed, rather than upon the evidence submitted at Miller's original sentencing hearing. In calculating drug quantities for sentencing purposes, a court may consider "relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of

6

reliability to support its probable accuracy." United States v. Bermea, 30 F.3d 1539, 1576 (5th Cir. 1994), cert. denied, 115 S. Ct. 1113, 1825 (1995); U.S.S.G. § 6A1.3(a). The court may consider estimates of drug quantities. United States v. Sherrod, 964 F.2d 1501, 1508 (5th Cir.), cert. denied, 113 S. Ct. 832, 834 (1992) and 113 S. Ct. 1367, 1422 (1993).

If waste materials cannot readily be separated from the controlled substance, the court may use "any reasonable method to approximate the weight of the mixture or substance to be counted." § 2D1.1(c), comment. (n.1). Expert testimony is a reasonable method of approximating the weight of a substance, and it may be used in a § 3582(c)(2) proceeding if the drugs upon which the original sentence was based have been destroyed. Mimms, 43 F.3d at 220-21. The commentary to § 2D1.1 indicates that if the district court determines that the quantity of drugs seized "does not reflect the scale of the offense," the court may approximate the quantity of the controlled substance by considering such factors as price, financial records, similar transactions by the defendant, and the size or capability of the drug laboratory. § 2D1.1(c), comment. (n.12).

The district court may rely upon testimony from a different proceeding to support its resentencing decision. Townsend, 55 F.2d at 172. It also may consider the prosecutor's unsworn statements if other evidence supports the government's arguments. United States v. Calverley, 11 F.3d 505, 515 (5th Cir. 1993) (direct criminal appeal), reinstated in relevant part on rehearing en banc,

**7**

37 F.3d 160, 165 (5th Cir. 1994), <u>cert. denied</u>, 115 S. Ct. 1266 (1995).  Nevertheless, the "unsworn assertions of the government's attorney do not provide, by themselves, a sufficiently reliable basis on which to sentence the defendant."  <u>United States v. Patterson</u>, 962 F.2d 409, 415 (5th Cir. 1992) (direct criminal appeal); <u>see also</u> <u>United States v. Alfaro</u>, 919 F.2d 962, 966 & n.18 (5th Cir. 1990) (direct criminal appeal holding that factual findings relative to sentence should not be based upon unsworn assertions, as such statements "do not bear sufficient indicia of reliability to support [their] probable accuracy" (internal quotation omitted)).  The district court erred by relying upon the unsworn hypothetical estimate submitted by the government, because it was unsupported by other evidence and, thus, did not bear sufficient indicia of reliability.  <u>Patterson</u>, 962 F.2d at 415.

The order denying reduction of sentence is VACATED.  This matter is REMANDED for further appropriate proceedings.[2]

---

[2] We note the pendency of No. 94-50536, <u>United States v. Allison</u>, rising the issue of whether a district court abuses its discretion in denying a § 3582(c)(2) motion based upon information available at the original sentencing but not subjected to testing or relied upon by the sentencing court.  The district court, on remand, may wish to consult the <u>Allison</u> decision once it is issued.